UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDWAY ASSOCIATES, INC., <br><br> Petitioner, <br><br> - v - <br><br> WINE, LIQUOR & DISTILLERY WORKERS UNION LOCAL 1-D, UFCW, <br><br> Respondent. | **Civil Action No. 21-cv-8536** <br><br> **VERIFIED PETITION** |

Petitioner Fedway Associates, Inc. ("Petitioner" or "Fedway") brings this action, pursuant to Section 301 of the Labor Management Relations Act, as amended, 29 U.S.C. §185 *et seq.* ("LMRA"), against Respondent Wine, Liquor & Distillery Workers Union Local 1-D, UFCW ("Respondent" or "Union"), requesting that this Court 1) issue a preliminary injunction staying the arbitration that Respondent has attempted to commence in New York County, New York, on the ground that Respondent expressly waived its right to arbitrate the precise issue that it now seeks to arbitrate, and 2) transfer this action to the United States District Court, District of New Jersey, Newark Vicinage ("DNJ"), on the ground that Petitioner has no contacts with the State of New York, so the DNJ can issue a declaratory judgment as to the arbitrability of the dispute. Alternatively, if this case is not transferred to the DNJ, Petitioner respectfully requests that this Court apply Third Circuit law and issue its own declaratory ruling and/or permanently enjoin the arbitration Respondent seeks to commence.

## PRELIMINARY STATEMENT

1. Petitioner is a wholesale liquor distributor that operates exclusively within New Jersey, pursuant to the terms of its New Jersey State Wholesale Licenses. Fedway employs approximately 300 employees at its Elizabeth, New Jersey facility (the "Facility").

1

2. The Union has represented Fedway's warehouse workers for at least the past thirty-eight (38) years. During that time, Fedway and the Union (collectively, the "Parties") have been party to successive collective bargaining agreements, all of which contained a grievance and arbitration procedure. The Parties' current collective bargaining agreement is effective for the period November 1, 2018 through October 31, 2023 ("CBA").

3. Donald Walker ("Walker") was employed at the Facility as a warehouse worker. As such, his terms and conditions of employment were governed by the CBA.

4. On October 21, 2019, following a workplace accident, Walker submitted to a drug and alcohol test and tested positive for marijuana.

5. In lieu of discharge, Fedway and the Union agreed that Walker would be reinstated pursuant to the terms of a last chance agreement ("LCA") that was signed by Petitioner, Respondent and Walker. Among other things, the LCA provided for two (2) years of random drug and alcohol testing and stated that a second positive test result would result in Walker's immediate discharge.

6. More importantly, the LCA further provided that: "I, Donald Walker, accept the terms and conditions of my return to work and continued employment. I understand that if I refuse to submit to a random drug test or test positive for a controlled substance, I will be subject to immediate discharge **without recourse to grievance or arbitration from my union**." (Emphasis added).

7. On June 30, 2021, Walker tested positive for marijuana again and was discharged. The Union then filed a grievance ("Grievance") and submitted a Demand for Arbitration ("Demand") to the American Arbitration Association ("AAA"), contesting Walker's discharge (hereinafter, the "Arbitration") and requesting that the Arbitration be held in Manhattan.

8. Petitioner immediately provided AAA with the LCA and advised that the issue sought to be arbitrated was not arbitrable, by agreement of the Parties. To date, AAA has not indicated whether it will accept the Union's Demand for filing or reject it altogether.

9. The facts compelling transfer of this action to the DNJ are overwhelming. First, Fedway transacts business in New Jersey only. Second, Walker worked exclusively at the Facility, which is located in Elizabeth, New Jersey. Third, Walker resided in New Jersey at all times relevant herein. Fourth, the CBA, and all of its predecessor agreements were negotiated and ratified in New Jersey. Fifth, the CBA expressly incorporates New Jersey law and New Jersey's arbitration statutes. Sixth, the Parties have only arbitrated two or three grievances over the last 38 years, but each arbitration hearing was conducted in New Jersey.

10. Moreover, based on governing Third Circuit case law, the LCA waived the Union's right to arbitrate Walker's termination. Sterrett v. Giant Eagle Inc., 681 Fed. App'x. 145 (3d Cir. 2017).

11. For these reasons, Petitioner respectfully requests that the Court issue a preliminary injunction staying the Arbitration and transfer this action to the DNJ, which will issue a declaratory judgment as to the Parties' rights and obligations under the LCA. Alternatively, Petitioner respectfully requests that this Court issue a declaratory judgment that Walker's termination is not arbitrable and/or permanently enjoin the Arbitration.

## JURISDICTION

12. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §1331, because this action implicates a question under federal law.

13. This Court has federal question jurisdiction over this action by reason of Section 301 of the LMRA, and authority to grant the requested relief pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §1 et seq., 28 U.S.C. §§1404, the Declaratory Judgment Act, 28 U.S.C.

3

§2201 *et seq.*, and/or Rules 57 and 65, Fed.R.Civ.P., since, *inter alia*, this action concerns an alleged breach of a labor agreement, as well as Petitioner's request for an injunction staying the Arbitration.

## VENUE

14. Venue is proper before this Court under and by virtue of the provisions of 28 U.S.C. §1391, and Section 301(a) and (c) of the LMRA, in that this action implicates a question under federal law, and the Union's attorneys submitted a Demand for Arbitration to AAA's Manhattan offices, requesting that the Arbitration be held in Manhattan.

## FACTS

### A. Fedway

15. Petitioner is a corporation organized and existing under the laws of the State of New Jersey and is duly authorized to transact business in the State of New Jersey.

16. Petitioner has maintained a principal place of business at 505 Westgate Corporate Center, Basking Ridge, New Jersey, for more than 8 years. For the 42 years prior, Fedway's principal place of business was located at River Terminal Development, Kearny, New Jersey.

17. At all times relevant herein, Petitioner was and still is an employer engaged in an industry affecting commerce, as defined in Section 301(a) of the LMRA.

18. At all times relevant herein, Petitioner was and still is an employer within the meaning of Section 2(2) of the National Labor Relations Act ("NLRA"), 29 U.S.C. §152(2).

19. Specifically, Petitioner is engaged in the wholesale distribution of liquor to retail customers located in New Jersey only.

20. Petitioner does not transact business in New York.

21. Robert D. Sansone ("Sansone") is the Executive Vice-President of Fedway.

22. Richard J. Delello, Esq. ("Delello") is legal counsel for Fedway.

23. Harold L. Hoffman, Esq. ("Hoffman") is legal counsel for Fedway.

**B.     The Union**

24. Respondent is a labor organization within the meaning of Section 301(a) of the LMRA and Section 2(5) of the NLRA, representing employees in industries affecting commerce, including but not limited to truck drivers.

25. Respondent is the collective bargaining representative of the warehouse workers employed by Fedway at the Facility.

26. Respondent has an office located at 8402 18th Avenue, Brooklyn, New York 11214.

27. Donald Rutan is President of the Union.

28. J. Warren Mangan, Esq. ("Mangan") is legal counsel for the Union.

**C.     The Parties' Dealings During The Past 38 Years**

29. During the past 38 years, the Parties have been signatory to successor collective bargaining agreements that set forth the terms and conditions of employment for Fedway's warehouse workers.

30. During that time, all collective bargaining between the Parties has taken place in New Jersey. In this regard, the CBA was negotiated over the course of roughly six (6) weeks in 2018, with all bargaining sessions held in Newark, New Jersey. Moreover, all ratification votes were taken in New Jersey.

31. During that time, the Parties have arbitrated approximately two (2) or three grievances. All arbitration hearings were conducted in New Jersey.

32. Article XXIV, Section 24:01 of the CBA provides that, "The parties agree to submit solely to arbitration all disputes, grievances or issues that may arise between them

involving the interpretation or application of this Agreement during the term thereof, or upon any subsequent renewal, reopening or modification thereof, and such arbitration shall be the sole and exclusive remedy available to the parties."

33. Article XXIV, Section 24:02 of the CBA provides that, "The Employer and the Union shall respectively select a representative for the purpose of settling any such disputes, grievances, issues or interpretation of the Agreement, and that their unanimous decision shall be final and binding upon both parties."

34. Article XXIV, Section 24:03 of the CBA provides that, "In the event that both the representative of the Employer and the Union do not agree upon any settlement or decision, then the matter shall be submitted to the American Arbitration Association (AAA), and the decision of the AAA shall be final and binding upon both parties."

35. Article XXIV, Section 24:04 of the CBA provides that, "The parties agree to be bound by the award and/or decision of the arbitrator and representatives as set forth herein above in Section 24:02 and 24:03 of Article XXIV and to comply with all the terms of said award and/or decision, and that the award and/or decision shall be binding upon and effective upon the parties with the same force and effect as provided for in the Arbitration Statutes of the State of New Jersey and/or any other legislation made and provided for the enforcement of arbitration provisions in collective bargaining agreements."

### D.    **Donald Walker**

36. Walker commenced his employment with Fedway in a non-bargaining unit position on September 28, 2015. He was transferred into the bargaining unit on August 21, 2017. At all material times herein, Walker was employed as a warehouse worker.

37. Walker performed all his work at the Facility. He did not perform any work for Fedway in New York.

38. Upon information and belief, Walker has resided in New Jersey at all times relevant herein.

39. On October 21, 2019, Walker was involved in a work-related accident. As a result, Walker underwent a drug and alcohol test, tested positive for marijuana and was terminated. Pursuant to the CBA, employees can be terminated for "just cause."

40. On or about October 30, 2019, the Union requested, pursuant to the CBA, that Walker be permitted to enter a rehabilitation facility.

41. Subsequently, the Parties agreed to the terms of the LCA, with Walker and Respondent signing the LCA on November 24, and December 11, 2019, respectively.

42. Paragraph 1 of the LCA provides that, "You will serve an unpaid disciplinary suspension from October 22, 2019 until receiving a release from Fedway's Substance Abuse Professional (SAP) to return to work, scheduled for November 24, 2019. You will receive no compensation of any kind for this period but Fedway will continue to make its appropriate contribution into the Local 1 benefit funds during the period of your disciplinary suspension. Your seniority date will not be altered by this agreement."

43. Paragraph 2 of the LCA provides that, "You agree to submit to a 'substance abuse assessment' as directed by Fedway's SAP. Further, you agree to participate in any mandated program or visits that are established by the SAP including any assessment, evaluation, and follow up as is determined. Failure to attend, fully cooperate, successfully complete, and/or follow the dictates or recommendations made by the SAP will lead to your automatic termination. Fedway will pay for the initial SAP consultation and you will be responsible for payment of any and all subsequent treatment/sessions as recommended by the SAP."

44. Paragraph 3 of the LCA provides that, "You will return to work only after having fully completed all the requirements and recommendations of the treating clinic and Fedway's

SAP including the successful completion of any rehabilitation program and follow-up care for a minimum of one year."

45. Paragraph 4 of the LCA provides that, "Upon receiving a release to return-to-work and prior to returning, you will be required to undergo a drug/alcohol screen. Upon your return to work, you will be subject to periodic, unannounced testing at Fedway's discretion for a period not to exceed two (2) years. Should you again test positive for either drugs or alcohol after being permitted to return to work, you will be discharged."

46. Paragraph 5 of the LCA provides that, "This constitutes a full settlement of this matter with the understanding that **you have been placed on a final warning** which will be reflected in your personnel file. Failure to comply with any of the terms or conditions set forth above will result in your immediate discharge." (Emphasis in original).

47. Finally, the LCA includes Walker's acknowledgement that, "I, Donald Walker, accept the terms and conditions of my return to work and continued employment. **I understand that if I refuse to submit to a random drug test or test positive for a controlled substance, I will be subject to immediate discharge without recourse to grievance or arbitration from my union.**" (Emphasis added).

E. <u>**Walker Violates The LCA And Is Terminated**</u>.

48. On June 21, 2021, Fedway was notified by its alcohol/drug screening vendor that Walker's June 14, 2021 test was positive for marijuana.

49. On June 25, 2021, Fedway notified Walker and the Union by letter that his employment was terminated pursuant to the terms of his LCA.

F. **The Union Files Its Grievance With Fedway And Submits Its Demand For Arbitration To AAA.**

50. On or about June 30, 2021, the Union filed the Grievance, which contests Walker's termination.

51. On August 13, 2021, Sansone emailed the Union with Fedway's answer to the Grievance, as follows: "[Walker] was terminated in strict accordance with [Walker's] Last Chance Agreement (LCA), which was executed by [Walker] and his Union just 18 months ago. Pursuant to the LCA, [Walker] and the Union agreed that if he subsequently tested positive, which he did, 'I will be subject to immediate discharge without recourse to grievance or arbitration from the union.' As such, the Union has waived any right to grieve or arbitrate [Walker's] termination."

52. On August 11, 2021, the Union submitted the Demand to Leslie Murphy ("Murphy"), a Case Administrator in AAA's Manhattan offices.

53. According to the Demand, Fedway breached the CBA by terminating Walker "without just cause." The Demand requests a make-whole remedy. However, the Demand makes no reference to Walker's LCA.

54. In the Demand, the Union also requests that the arbitration hearing take place in Manhattan.

55. On August 13, 2021, Delello emailed Murphy, copying Mangan, stating, in pertinent part, that "the Union previously agreed that [Fedway's] termination of Donald Walker is neither grievable or arbitrable, according to the express terms of the attached [LCA], which was fully executed by our client, [the Union], and Donald Walker. You will see the express waiver of the Union's right to grieve or arbitrate directly above the signatures of the parties.

Given the parties' express agreement <u>not</u> to arbitrate Donald Walker's termination, AAA should not process [the Union's] Demand."

56.     On August 15, 2021, Mangan responded to Delello's email stating, "Leslie: This is a brief response to Mr. Delello's conclusory email-totally unsupported by a recitation of allegations in support of his 'findings'.  The CBA provides that 'all disputes, grievances or issues" are to be submitted to arbitration.  AAA is the administrative agency for the arbitration."

57.     On August 16, 2021, Delello replied to Mangan's email stating, "Leslie: [Mangan] is correct that the CBA provides for arbitration.  However, I sent you a fresh, signed waiver of the Union's right to arbitrate the termination of Donald Walker.  As such, the parties have specifically agreed <u>not</u> to arbitrate the termination of Donald Walker – which is precisely what the Demand seeks.  As you know, arbitration is purely consensual.  For that reason, AAA should not process the instant Demand."

58.     Later that day, Mangan replied. "Leslie:  I still don't accept the procedural absolute defense being offered.  The employer's argument is without merit and is to be made to the assigned arbitrator for his/her determination."

59.     Then, on August 19, 2021, Delello replied to Mangan's August 16, 2021 email, as follows: "Leslie:  We provided AAA with the Union's signed waiver of its right to grieve or arbitrate Donald Walker's termination.  As you know, AAA is not to take jurisdiction over a matter, absent proof of an agreement to arbitrate.  The Union's waiver means Donald Walker's termination is substantively not arbitrable, i.e., there are no procedural issues, such as timeliness, for an arbitrator to decide.  In any event, we assume the Union's signed waiver of its right to arbitrate will be forwarded to AAA's in-house counsel for review."

60.     To date, neither Murphy nor anyone else from AAA has acknowledged receipt of the Demand or responded to the above emails.

61. Upon information and belief, Mangan claims that on September 7, 2021, he mailed a letter addressed to Sansone at 20 North Avenue, East Elizabeth, New Jersey ("September 7 Letter"). Sansone did not receive the September 7 Letter, however, because it was not accurately addressed. Among other things, there is no East Elizabeth, New Jersey.

62. Then, on September 29, 2021, Mangan contacted Hoffman and asked whether Fedway had received the September 7 Letter. Hoffman said "no".

63. So, later that same day, Mangan emailed Hoffman a copy of the September 7 Letter.

64. The September 7 Letter provides, in part, "that pursuant to Section 7503(c) of the Civil Practice Laws and Rules of New York, unless you apply to stay arbitration of said dispute within twenty (20) days after service of this notice, you 'shall thereafter be precluded from objecting that a valid agreement was not made or has not been complied with and from asserting in court the bar of a limitation of time.'"

65. The September 7 Letter also states that the issue to be arbitrated is "[w]hether Donald Walker was discharged for just cause and, if not, what shall be the remedy?"

66. On September 30, 2021, Delello delivered the following letter to Mangan:

> We note that your letter dated September 7, 2021 was misaddressed. There is no East Elizabeth. Both Fedway's and Robb Sansone's offices are located at 505 Westgate Corporate Center, Basking Ridge, NJ 07920. In any event, we received your letter dated September 7, 2021, as an attachment to your September 29 email.
>
> Although we are in receipt of your purported 20-day notice pursuant to New York CPLR Section 7503(c), this is a New Jersey case. Fedway does business in New Jersey only. Mr. Walker resided in Jersey City, New Jersey while working as a bargaining unit employee at Fedway's Elizabeth, New Jersey warehouse. As you know, for at least the past 46 years, our clients' current collective bargaining agreements were negotiated in New Jersey.

11

Moreover, as you also know, all arbitration hearings between our clients during that 46-year period were held in New Jersey.

In addition, and perhaps most important, our clients agreed, at Article 24.04, that arbitrations are governed by 'the Arbitration Statutes of the State of New Jersey.' Article 18.01 also makes explicit reference to New Jersey law. As such, the only connection this matter seems to have to New York State is the location of your client's offices – which is not a basis for jurisdiction in this matter. Moreover, even if this matter were arbitrable, the Demand should have been filed with AAA's Somerset, New Jersey offices, as per Article 24.04.

Further, we do not concede that the Union's naked Demand constitutes a submission to arbitration within the meaning of Section 7503(c) – even if New York law did apply, and it most certainly does not for the reasons outlined above. As you know, we advised AAA, immediately after the Demand was transmitted to AAA, that the Union had waived its right to arbitrate the specific issue which the Union seeks to arbitrate, and we provided AAA with the Union's signed agreement not to arbitrate. As you know, AAA has not assigned a case number nor has it issued a panel of arbitrators as per its normal processing of a Demand for Arbitration. In fact, AAA has yet to contact us regarding the Union's Demand, which you submitted on August 11, 2021. In my 40 years dealing with AAA, all-across the country, this is highly unusual.

We suspect AAA has not accepted the Union's Demand because we provided AAA with the Union's agreement not to arbitrate the precise issue the Union seeks to arbitrate. As you know, AAA cannot proceed with a Demand to arbitrate unless the party seeking arbitration produces the other party's agreement to arbitrate. Here, the Union's specific agreement not to grieve or arbitrate Mr. Walker's termination obviously trumps the collective bargaining agreement's general arbitration provisions. Regardless, because there is as yet no evidence that AAA has accepted the Union's Demand for processing and ultimate assignment to an arbitrator, the Union's 20-day notice is premature, even if New York law applied.

Given the Union's agreement not to arbitrate Mr. Walker's termination, Fedway will seek sanctions if it is required to move to enjoin arbitration and/or transfer any proceedings to New Jersey. As always, Fedway reserves all its rights in connection with this matter.

67. The Union has not responded to Delello's September 30, 2021 letter.

## CLAIMS FOR RELIEF

### COUNT I
### (Preliminary Injunction Staying The Arbitration)

68. Petitioner repeats and realleges the allegations set forth in paragraphs 1 through 67 hereof as if fully set forth herein.

69. Arbitration is purely consensual. If the Parties have not agreed to arbitrate the matter in dispute, they cannot be forced to do so.

70. Here, Fedway, the Union and Walker expressly agreed that the LCA superseded both the CBA's "just cause" standard for discharge and its grievance and arbitration procedure. Specifically, with Walker's written consent, the Union agreed that another positive test would result in Walker's immediate termination, "without recourse to grievance or arbitration from my union."

71. Nonetheless, the Union is now attempting to compel Petitioner to arbitrate the Union's claim that Walker was not terminated for "just cause".

72. Based on the clear and unambiguous terms of the LCA, the precise issue which the Union seeks to arbitrate is not arbitrable, by agreement of the Parties.

73. This Court has the authority to apply Third Circuit case law and determine whether this dispute is arbitrable.

74. This Court should exercise its authority and rule that the issue the Union seeks to arbitrate is not arbitrable, by agreement of the Parties.

75. A party suffers irreparable harm if it is forced to arbitrate a dispute that it did not agree to arbitrate.

76. Petitioner will suffer irreparable harm if it is required to arbitrate the dispute concerning Walker's discharge.

77. The balance of equities weighs in Petitioner's favor. Among other things, Walker has the right to commence an action for breach of the LCA in a court of competent jurisdiction.

78. Public policy is best served by preventing Petitioner from being compelled to arbitrate a dispute that it did not agree to arbitrate.

79. Therefore, the Court should enter an order preliminarily staying the Arbitration that the Union seeks to commence, pursuant to Rule 65, Fed.R.Civ.P.

80. No prior application has been made for the relief requested herein.

## COUNT II
### (Transfer This Action To The DNJ)

81. Petitioner repeats and realleges the allegations set forth in paragraphs 1 through 80 hereof as if fully set forth herein.

82. Petitioner has not agreed to arbitrate with the Union in New York.

83. The CBA expressly provides that New Jersey's arbitration statutes govern arbitrations between the Parties.

84. Based on the absence of any contacts between Petitioner and New York, this civil action should be transferred to the United States District Court, District of New Jersey, Newark Vicinage, pursuant to 28 U.S.C. §1404(a), where Petitioner can obtain an order from that Court enjoining the Union from proceeding with the Arbitration.

## COUNT III
### (Permanent Injunction Staying The Arbitration)

85. Petitioner repeats and realleges the allegations set forth in paragraphs 1 through 84 hereof as if fully set forth herein.

86. If this Court does not transfer this action to the DNJ, Petitioner respectfully requests that the Court enter an order permanently enjoining the Arbitration that the Union seeks to commence, pursuant to Rule 65, Fed.R.Civ.P.

87. No prior application has been made for the relief requested herein.

### COUNT IV
**(Declaratory Judgment That The Union Waived Its Right To Grieve And/Or Arbitrate Walker's Violation Of The LCA)**

88. Petitioner repeats and realleges the allegations set forth in paragraphs 1 through 87 hereof as if fully set forth herein.

89. Since the Union and Walker expressly agreed that Walker was subject to immediate discharge for a positive test result, without recourse to the CBA's grievance or arbitration procedure, Petitioner should not now be compelled to arbitrate the very issue the Parties agreed not to arbitrate, *i.e.*, whether Walker was discharged for just cause.

90. An actual controversy of sufficient immediacy exists between the Parties as to whether Petitioner is required to arbitrate whether Walker was discharged for just cause.

91. If the Court does not transfer this action to the DNJ, Petitioner respectfully requests a judicial determination, pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201 *et seq*., and Rule 57, Fed.R.Civ.P., that the Union is barred from arbitrating whether Walker was discharged for just cause.

**WHEREFORE**, Petitioner requests that the Court:

1. Issue an Order:

    (a) Preliminarily enjoining Respondent from pursuing arbitration of its claim that Walker was not terminated for "just cause", and

    (b) Transferring this action to the United States District Court, District of New Jersey, Newark Vicinage, where Petitioner can obtain an order permanently enjoining the Union from pursuing arbitration of its claim; or,

2. In the alternative, issue an Order:

    (a) Declaring that, by agreement of the Parties, the CBA's grievance and arbitration procedure is not enforceable against Petitioner with respect to Walker's termination for violation of the LCA; and,

    (b) Declaring that Petitioner is not bound to arbitrate the Union's claim that Walker was not discharged for just cause; and,

    (c) Permanently enjoining Respondent from pursing arbitration of its claim that Walker was not discharged for just cause; and,

    (d) Compelling Respondent to immediately withdraw its Demand for Arbitration, with prejudice to any right to refile; and,

3. Award Petitioner the costs of the suit incurred; and,

4. Award Petitioner such other relief as the Court deems equitable, just and proper.

Dated: New York, New York
October 15, 2021

        Respectfully submitted,
HOROWITZ LAW GROUP, PLLC

By: *[signature]*
JOHN D. HOROWITZ, ESQ.
Attorneys for Petitioner
Fedway Associates, Inc.
One Grand Central Place
60 East 42nd Street, Suite 2450
New York, New York 10165
(O) (212) 920-4503

## VERIFICATION

STATE OF NEW JERSEY      )
                                              ) SS:
COUNTY OF SOMERSET   )

      Robert D. Sansone, of full age, being duly sworn according to law, upon his oath, deposes and says:

    1.     I am the Executive Vice-President of Fedway Associates, Inc.

    2.     I have read the foregoing Verified Petition. The allegations contained therein are true to the best of my knowledge, except as to matters alleged on information and belief, which I believe to be true based upon information given to me in the regular course of business by agents of Petitioner.

                                                        ROBERT SANSONE

Subscribed and sworn to
before me this 15th day
of October, 2021

Notary Public of
State of New Jersey



MARIA BURGAGNI
NOTARY PUBLIC OF NEW JERSEY
MY COMMISSION EXPIRES 4/20/2026